UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER L. STOECKEL,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Case # 18-CV-1475-FPG |
| v. |  | DECISION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, |  |  |
|  | Defendant. |  |

## INTRODUCTION

Plaintiff Jennifer L. Stoeckel brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, the Commissioner's motion is DENIED, Stoeckel's motion is GRANTED, and this case is remanded to the Commissioner for further proceedings.

## BACKGROUND

In September 2014, Stoeckel protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 150. She alleged disability since June 2014 due to bipolar disorder, depression, borderline personality disorder, and a back injury. Tr. 57. On June 29, 2017, Stoeckel and a vocational expert ("VE") testified at a hearing before Administrative Law Judge David J. Begley ("the ALJ"). Tr. 27. On October 2, 2017, the ALJ issued a decision finding that Stoeckel was not disabled. Tr. 11-22. On October 23, 2018, the Appeals Council denied

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

Stoeckel's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Stoeckel's claim for benefits under the process described above. At step one, the ALJ found that Stoeckel had not engaged in substantial gainful activity since the alleged

onset date. Tr. 13. At step two, the ALJ found that Stoeckel has severe impairments of degenerative disc disease and "various psychiatric impairments alternatively diagnosed as bipolar disorder, depressive disorder, and borderline personality disorder." *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Stoeckel retains the RFC to perform light work with additional limitations. Tr. 15. Concerning her mental impairments, the ALJ found that Stoeckel could work in a low-stress job doing simple, routine, and repetitive tasks, so long as she only had occasional contact with coworkers and supervisors and had no direct interaction with the general public. *Id.* At step four, the ALJ found that Stoeckel cannot perform her past relevant work. Tr. 20. At step five, the ALJ relied on the VE's testimony and found that Stoeckel can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 20-21. Accordingly, the ALJ concluded that Stoeckel is not disabled. *Id.*

## II. Analysis

Stoeckel argues, among other things, that the ALJ's functional assessment of her mental impairments was erroneous because it was not grounded in any medical opinion. Because the Court agrees, it does not reach Stoeckel's other arguments.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). Even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's

exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted). Still, depending on the circumstances, like when the medical evidence shows only minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.* But courts are wary of permitting an ALJ to use common sense to assess mental limitations, "which are by their nature highly complex and individualized." *Kiggins v. Comm'r of Soc. Sec.*, No. 17-CV-6642, 2019 WL 1384590, at *5 (W.D.N.Y. Mar. 27, 2019) (internal quotation marks omitted); *see also Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019) (collecting cases).

The Court concludes that the ALJ's analysis is erroneous as it relates to Stoeckel's ability to interact with co-workers, supervisors, and the public. The record is mixed on this issue. Stoeckel testified to extreme limitations in her ability to interact with others. She stated that she does not answer her doorbell, avoids social situations and crowds, and generally isolates herself. Tr. 46. She indicated that she has "very few" friends but will sometimes have dinner with her next-door neighbor, though she hosts such gatherings because she does not "like to go to other people's houses." Tr. 43. In her function report, Stoeckel indicated that she does not spend time with others, feels "awkward socially," and cannot go outside alone because it is too overwhelming and stressful. Tr. 218, 220.

Jessica Utech, a treating Physician's Assistant, completed a medical source statement in June 2017. She opined that Stoeckel would have a "fair" ability to relate to co-workers and interact with supervisors, and a "poor" ability to deal with the public and work stress. Tr. 466. Stoeckel would have a "fair" ability to behave in an emotionally stable manner and be reliable, but a "poor" ability to relate predictably in social situations. Tr. 467. Utech noted that Stoeckel's anxiety made

it difficult for her to interact with unfamiliar people and would render her unable to work in close proximity to others. *Id.* Utech also indicated that Stoeckel's condition would significantly deteriorate if she returned to full-time employment.

Susan Santarpia, Ph.D., performed a psychiatric consultative examination in December 2014. She concluded that Stoeckel could "relate adequately with others" with no apparent limitations. Tr. 263-64.

In his decision, the ALJ concluded that Stoeckel could only have occasional contact with coworkers and supervisors and no direct interaction with the general public. Tr. 15. While this might ordinarily be the sort of factual resolution to which the Court must defer, it is the process by which the ALJ determined this limitation that the Court finds concerning. The ALJ seemingly rejected both medical opinions on Stoeckel's ability to interact with others, giving "very little weight" to Utech's opinion and "some" weight to Dr. Santarpia's opinion. Tr. 19-20. This put the ALJ in the position of assessing Stoeckel's social limitations based on his own review of her daily activities, the treatment notes and medical data, and the other record evidence.

As the Court discussed above, however, the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation. For example, from a lay perspective, it might seem reasonable for the ALJ to suggest that Stoeckel was only moderately limited in her ability to interact with others because "she reported socializing with friends and family and going out to dinner occasionally." Tr. 14. But that inference ignores the individualized and counterintuitive ways in which mental illness can manifest in a person. *See Nasci v. Colvin*, No. 15-CV-947, 2017 WL 902135, at *9 n.9 (N.D.N.Y. Mar. 7, 2017) (recognizing that "[t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse response to seemingly trivial circumstances"). Without some sort of medical opinion to

make the connection, the ALJ had no basis to conclude that, because Stoeckel could socialize with friends and family and "occasionally" go out to dinner, she could operate effectively in a competitive work environment. Where serious mental illness is at issue, the ALJ may not make these sorts of seemingly common-sense judgments about a claimant's abilities. *See id.* at *9 (noting that it is often "extremely difficult" to determine whether individuals with mental illness "will be able to adapt to the demands . . . of the workplace"). The other evidence that the ALJ relied on—*e.g.*, that Stoeckel went grocery shopping and did not have problems with authority figures—suffers from the same problem.

Therefore, the Court concludes that the ALJ erred when he rejected all of the record medical opinions and proceeded to evaluate Stoeckel's mental RFC based on his own lay interpretation of the evidence. Although his conclusion might ultimately be a permissible one to reach, his reasoning is not, and therefore remand is required.[2] *See Black v. Berryhill*, No. 17-CV-557, 2018 WL 4501063, at *6 (W.D.N.Y. Sept. 20, 2018) (noting that a reviewing court may not rely on *post hoc* rationalizations for agency action). On remand, the ALJ should clarify the basis for his decision and/or further develop the record as to Stoeckel's mental limitations.

---

[2] The Court notes that the ALJ's error was not harmless. Although the RFC aligns in some respects with Utech's medical source statement, Utech opined that Stoeckel has a poor ability to relate predictably in social settings and would not be able to work in the same general area as other people—limitations that the ALJ did not include in the RFC. Tr. 467.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED and Stoeckel's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 24, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court